## COHEN *v.* COMMONWEALTH.

Under the act of the 10th of March, 1810, a prothonotary is not allowed to retain the expenses of clerk-hire and stationery, out of the excess of fees received over $1500, before accounting for, and paying over to the Commonwealth *fifty per centum* of the said excess: all that he can retain is the sum of $1500; and he is bound to account to the Commonwealth for one-half of all fees received above that amount.

The act of the 10th of March, 1810, entitled "An act taxing certain officers," requiring prothonotaries to pay into the State Treasury *fifty per centum* of the excess over $1500 of fees received, is to be viewed as a law fixing and defining the compensation of the said officers, and not as a law assessing or levying a state tax, and is not, therefore, within the repealing clause of the 34th section of the act of the 29th of April, 1844, entitled, "An act to reduce the state debt."

IN error to the Court of Common Pleas of Dauphin county.

*June* 28. This case came into the court below, on an appeal by J. Simon Cohen, the plaintiff in error, who was defendant below, from the following settlement of his accounts, as prothonotary of the Supreme Court in and for the Eastern District of Pennsylvania, by the auditor-general of the Commonwealth:

J. Simon Cohen, prothonotary Supreme Court Eastern District of Pennsylvania, in account with the Commonwealth of Pennsylvania.

To Office Fees, Dr.

For amount due for the years 1843–4, as per account,
    settled the 12th August, 1845, . . . . $1644 54

Received from 1st October, 1844, to 1st October, 1845,
   as per account herewith filed,  .   .   .   .   .  $902 75

                                              $2547 26

Cr.

By amount paid on fees of 1843,   .   .  $148 38
    "       "      "   1844, .   .   .  130 00
    "       "      ".   1845,   .   .  127 75

                                            $406 13

                  Due Commonwealth, .   .  $2141 16
  Settled and entered,                 JOHN N. PURVIANCE.
*Auditor-General Office,* December 2, 1845.
                      Approved for James R. Snowden,
                                 ASA DIMOCK.
*Treasury Office,* December 2, 1845.

    The appeal from the above settlement was accompanied by the following specification of objections, and filed, according to law, in the office of the auditor-general:

    1. The said settlement disallows him the expenses for clerk-hire, and stationery claimed by him in his account, viz: $1200 for the year ending 1st October, 1833; $1456 for the year ending 1st October, 1844; and $1550 for the year ending 1st October, 1845.

    2. Agreeably to the laws taxing his said office, he has fully paid and accounted for all money in his hands, due, or owing to the state.

    3. The law imposing a tax on his said office has been repealed by subsequent acts of Assembly.

    The auditor-general will please file in his office this appeal and specification of objections.

    January 27th, 1846.
To JOHN N. PURVIANCE, Esq.,            J. SIMON COHEN,
  *Auditor-General of Pennsylvania.*    *Prot. S. C. Pa. E. Dist.*

    The facts of the case, and the questions raised on the trial, are stated in the charge of his honour, Judge ELDRED, to the jury, which was as follows:

    "By the act of Assembly, passed 10th March, 1810, the prothonotary of the Supreme Court, Nisi Prius, &c., is required to keep a fair and accurate account of all fees received, &c., and shall annually furnish a copy thereof to the auditor-general, who shall proceed to examine the account. And whenever the amount of

said account shall exceed $1500, the said auditor-general shall charge such officer fifty per cent. on the amount of said excess.

"The Commonwealth claims of the defendant, who is the prothonotary of the Supreme Court and Nisi Prius, $2141 16, which, it is alleged, is fifty per cent. on the excess of his fees received by him, over $1500 per year. The Commonwealth gave in evidence the settlement made by the auditor-general and state treasurer of this account, on the 3d December, 1845, by which it appears that the above balance is due the Commonwealth; and it is from this settlement the defendant has appealed. There is no dispute about the amount of fees received; but the defendant claims to be allowed for clerk-hire and stationery, and that before the Commonwealth can charge 50 per cent. on the excess, these necessary expenses should be deducted. The defendant, in sending in his yearly statements from 1st October, 1842, to 1st October, 1845, rendered his account for clerk-hire each year, and promptly remitted 50 per cent. on the excess; and the question in dispute is, whether the defendant is entitled to be allowed the necessary expenses of clerks out of the excess over $1500. If he is, then there is nothing due the Commonwealth; if he is not, the balance, as stated, is due, and for it the Commonwealth is entitled to a verdict.

"I am of the opinion, on a reference to the act of Assembly, that the auditor-general was right in disallowing the clerk-hire and stationery account. This may operate very hard on the defendant; for it appears that it is necessary for him to have three clerks to aid him in properly discharging the duties of this important office, and that he has paid those clerks from $1200 to $1450 per year. But the act of Assembly is clear and plain; and when so, the court cannot go beyond it, however hard the case may be—the legislature alone can afford relief. The defendant also contends that the act of 10th March, 1810, was repealed by the act of Assembly, 29th April, 1844, entitled 'An act to reduce the state debt, &c.;' Pamph. Laws, 499. That under this act the legislature taxed all salaries and emoluments of office two per cent., and declared that 'all laws heretofore passed for levying taxes for state purposes are hereby repealed,' and that this repeal would affect at least a part of the claim.

"This presents a very important question, for if it repeals all laws that bring in a revenue for state purposes, it must depreciate the revenue of the state in each year vastly. Large amounts are received yearly from the tax on offices, including prothonotaries, recorders, &c., and tax on writs, and tavern and retailers' licenses,

&c.; and if the repealing part of the act of 29th April, 1844, repeals the act of 10th March, 1810, entitled 'An act taxing certain officers,' I cannot see why it does not repeal all the acts of Assembly by which revenue is secured to the state, and, if so, the act of 1844 would have an effect directly opposite to what was evidently intended by the legislature. Instead of its being 'An act to reduce the state debt,' as it purports to be, it cuts off a large amount of the means of doing so. The language used is strong, and, at first, it would appear to repeal all laws imposing taxes for state purposes. The words are, 'All laws· heretofore passed, levying taxes for state purposes, are hereby repealed.'

" The language is certainly broad enough to include the repeal of the act of 6th April, 1830, which imposes a tax on writs, and from which a large revenue is derived. The title of this act is 'An act for the levy and collection of taxes upon proceedings in courts, &c.' Notwithstanding no one has supposed that the tax on writs was repealed by the act of 29th April, 1844, and yet the title is for the levy and collection of taxes, &c., and certain it is for state purposes.

" The repealing clause in the act of 1844, was, to say the least of it, carelessly drawn, and little considered by the legislature, for the words seem fairly to embrace that act, and to repeal it.

" Yet I cannot for a moment believe that such was the intention of the legislature. The intention of the legislature has a controlling influence in the construction of statutes passed by them. It is one of the best tests to be applied, when from the words you are in doubt as to the meaning. In 1840, the history of our state furnishes abundant proof that our state was vastly in debt; and before that period we had gone on and borrowed money to pay the interest. Our legislature became convinced of the importance of providing in a more rational manner a fund to pay the interest, and to reduce the debt, if possible. On the 11th June, 1840, they passed an act, entitled 'An act to create an additional revenue, &c.' In this act the legislature laid an additional tax on various articles not before taxed for state purposes. In this act they begin to use all the machinery used heretofore for the *raising and collecting county rates and levies,* and on salaries and emoluments of office they laid a tax of one per cent. upon every dollar of the value thereof, and such additional rates and levies 'were to be assessed and collected as county rates and levies are now collected.'

" The following year, to wit :—1841, further provisions were made by the legislature 'to provide revenue, &c.,' to meet the demands

of the treasurer. (See Pamph. Laws, page 307 and 310.) It is provided that in lieu of the taxes imposed by the act of 11th June, 1840, upon salaries and emoluments of office, there shall be assessed and collected two per cent. Then followed the act of 29th April, 1844, (Pamph. Laws, 499,) entitled 'An act to reduce the state debt, &c.' This act includes many articles for taxation for state purposes not before taxed, and requires the tax to be assessed and collected with the county rates and levies. The 34th section contains the repealing clause now under consideration—'All laws heretofore passed for levying taxes for state purposes are hereby repealed.'

"By the whole course of legislation, from 1840, down, the legislature was evidently aiming to increase the taxes to meet the emergencies of the occasion: and with this object in view, when they said in the act of 1844, that 'All laws heretofore passed for *levying* taxes, &c., for state purposes, are hereby repealed,' they only meant such laws as were passed on the 11th June, 1840, and 12th April, 1841, wherein, for the first time, they began to make use of township and county officers for the *levying* the tax, and for collecting it as the county rates and levies were collected. I am therefore of the opinion that the 34th section of the act of 1844 does not repeal the act of 10th March, 1810, (McKinney, 812,) entitled 'An act taxing certain officers.' This construction is favored, also, by the proviso to this same section, which provides, 'That such laws shall still be in force for the collection of all taxes due or *assessed* by virtue of such laws. This proviso is a clear indication that the legislature had no idea of repealing any law in relation to revenues of the state, excepting those laws where the revenue was raised and collected with the county rates and levies by assessment, &c.

"The Commonwealth is entitled to recover."

To this opinion and charge the defendant excepted.

The jury returned a verdict for $2199 72, in favour of the plaintiff; whereupon the defendant sued out this writ of error, and assigned the following errors here:

1st. The court erred in charging the jury that the defendant ought not to be allowed the expenses for clerk-hire, &c., claimed by him in his account, the same having been necessarily incurred in the performance of the duties of his office.

2d. The court erred in charging the jury that the act of Assembly, entitled an act taxing certain officers, passed the 10th March, 1810, was not repealed by subsequent acts of Assembly.

3d. The court ought to have charged the jury to find a verdict for the defendant, for the reasons stated in the appeal, from the

settlement of the accounts by the auditor-general and state treasurer.

*McCormick* and *Meredith*, for plaintiff in error.—The question is, whether the plaintiff in error, under the act of 1810, should not be allowed for clerk-hire and stationery, out of the amount of fees received by him, before the Commonwealth can claim fifty per cent. on the excess over $1500. Is this act, for the purposes of taxation, to be construed on the net or gross amount of fees received? The act of 5th April, 1842, section 7, (Pamph. Laws, 238,) requiring the public officers of Philadelphia county to file in the office of the county treasurer a written statement, under oath, &c., of the gross receipts and expenditures of their several offices, for clerk-hire, stationery, &c., does not include the prothonotary of the Supreme Court; nor does the act of 21st April, 1846, section 10, (Dunlop, 968 :) and the necessary implication therefore is, that such officer was to be taxed only for the net amount of fees received. It is agreed, on all hands, that the prothonotary of the Supreme Court is to have $1500; but under the construction of the act of 1810 contended for, he would not, after paying clerk-hire, stationery, &c., receive $800, the sum he pays one of his clerks. To discharge his official duties in a proper manner, and to subserve the interests of the public, it is proved that the plaintiff in error must have three clerks: and they must be paid.

The public has nothing to do with expenditures of offices. They contended, that the repealing clause of the act of 29th April, 1844, section 34, (Purdon, 1102,) repealed the act of 1810. The act of 1810 charges a tax of fifty per cent. on the excess of fees received over $1500. The act of 29th April, 1844, charges *two per cent.* on the emoluments of office. The different taxes imposed by those acts on prothonotaries, &c., are not cumulative. The plaintiff in error, the prothonotary of the Supreme Court at Philadelphia, has paid the tax of *two* per cent. on the emoluments of his office, and is willing to continue to do so ; but declines, unless this court determine otherwise, to pay fifty per cent. *more*, under what he considers a repealed act ; and the construction of which, for the purposes of taxation, *if not repealed*, must and should be upon the net, and not the gross amount of the excess of fees received over $1500.

*Lesley*, and *Champneys*, Attorney-general, contrà, contended, 1st, *that the act of 10th March, 1810, does not authorize prothonotaries, &c., to charge the state with their office expenses.*

That act directs that they shall keep "a fair and accurate ac-

count of the *fees,*" (not the expenses,) of their office, using the language of the act of 5th December, 1801, (Pamph. Laws, p. 3,) and of the act of 24th Feb. 1806, sect. 27, (4 Smith's Laws, 278.)

The language of the act shows that the employment of clerks by prothonotaries, &c., was contemplated by the legislature, and had they intended the state should pay them, would have said so.

In Hiester *v.* Commonwealth, 17 Serg. & Rawle, 255; Commonwealth *v.* West, 1 Rawle, 29; and Commonwealth *v.* Murdoch, 3 Watts, 282, it was not disputed that the officer is bound to pay into the treasury fifty per cent. of the excess over $1500.

The legislature would not have deemed it necessary to pass the act of 22d June, 1839, (see Pamph. Laws, p. 390, section 3,) if expenses of office were chargeable to the state under the act of 1810.

No other construction can be put upon this act than that expressly contained in the words. Broom's Leg. Max. 135, 136, Law Lib. vol. 1.

In this government, the greatest strictness is necessary in disbursing the public moneys, and for every disbursement there should be an appropriation of the legislature. A prothonotary is not allowed himself to appropriate the public funds.

The absence of statutory provisions, to ascertain the number and compensation of clerks necessary in the offices of prothonotaries, &c., shows that the legislature never intended that the state should pay their expenses. The emoluments of these offices keep pace with the labour to be performed in them. Under the construction, for which the plaintiff in error contends, the door is opened wide to fraud, and the object of the law defeated.

2d. *That the act of 10th March,* 1810, *is not repealed by the* 34th *section of the act of 29th April,* 1844.

The word "levying" restrains and explains the repealing clause. The same word is used in the 6th section of the act of 16th April, 1845. The words, "valued and assessed," are used in the 32d section of the act of 1844. To levy, signifies *to collect by assessment;* to assess, is *to fix the value of property for the purpose of being taxed.* Webster's Dict. The fifty per cent. tax on offices is not levied and assessed.

The object of the act of 1844 was to increase the revenues, but under the construction given it by the plaintiff in error, it would have reduced them, by repealing the tax on bank dividends, writs, collateral inheritances, auction commissions and duties, brokers' and tavern licenses, &c., (as well as the tax on offices,) none of which are specially referred to.

It substituted for all that it repealed.    The tax on salaries and emoluments in the 32d section, was in lieu of the tax on the same imposed by section 2 of the act of 11th June, 1840, (Pamph. Laws, 613,) and section 9th of act of 4th May, 1841, (Pamph. Laws, 310.)

The legislature should not be taken to have postponed a public right to that of an individual, unless such an intent be manifested by explicit terms.    Commonwealth v. Baldwin, 1 Watts, 55.

*June* 30.    Coulter, J.—This cause has been contested by the counsel for the respective parties with much power; but the court are conducted to the opinion which they have formed, by what they understand to have been the intent of the legislature in the various acts of Assembly which bear on the subject, without, however, discarding from their minds the topics which were brought into the argument by the counsel.

Two questions are presented for resolution.    The first is, whether the prothonotaries can lawfully retain the amount of clerk-hire for conducting their offices, and $1500, and fifty per cent. of the surplus over these sums, if any such surplus should be received.

The court are of opinion that they cannot, and that each prothonotary can retain only $1500, and that he must account to the Commonwealth for fifty per cent. of the surplus fees above that sum.

A strong and persuasive argument in favour of this position is to be found in the fact, that successive accounting officers of the government, since the year 1810, when the law on the subject was enacted, and the successive prothonotaries in every county in the state, have so understood the law, and acted upon that construction of its provisions.    The concentrated and pervading consent of intelligent minds in every part of the Commonwealth, for a period of thirty-seven years, is entitled to much weight, and cannot be lightly disregarded by this court.    The plain words of the statute can hardly be wrested to any other meaning by the most active ingenuity; " and whenever the amount of any of the said accounts shall exceed the sum of fifteen hundred dollars, the auditor-general shall charge the officers, respectively, fifty per cent. on the amount of such excess."

The argument of the defendant below is, that the auditor-general must settle the account, and that there would be no account to settle unless clerk-hire was to be allowed.    But the allowance of such credit would give to the auditor-general a discretion, which is not vested in him by law.    The law requires the prothonotary to furnish *an account* of all the fees received by him, on oath; and that is the account which is to be settled.    Has the officer exhibited

a true account? Has he charged the proper fees? Has he exhibited an account of the fees received by himself, and by *those employed by him in his office?* ·These are the matters to be adjusted in settling the account of fees received by him, according to the statute. When the account is thus settled, the auditor-general is to allow him $1500, and to charge him fifty *per cent.* of the surplus received by him. If the auditor-general was required to allow him for clerk-hire, why not allow him also for the expense of fuel, of light, and of washing and sweeping his office? All these things would imply a discretion in the auditor-general, which, for wise reasons, is not given to him. The officer could easily extinguish all surplus by extravagant charges. If the legislature had intended that such allowance should be made before the excess began to run, they would have so expressed it. If clerk-hire was to be allowed for conducting the office, and the other expenses of light and fuel, which we see no reason to distinguish from the other expenses, the $1500 would be converted into a mere annual sinecure.

The next question to be disposed of is, whether the act of 10th March, 1810, requiring prothonotaries to pay fifty per cent. into the treasury for the use of the Commonwealth, has been repealed by the act of 29th April, 1844. The clause in the last act which is alleged to have this effect, is in the following words, at the end of the thirty-fourth section, to wit: "and upon all other property heretofore made taxable for state purposes, or that are made so by the thirty-second section of this act, three mills on every dollar of the value. All other laws heretofore passed for laying taxes for state purposes are hereby repealed: provided that the said laws shall still be in force for the collection of all taxes, due or assessed, by virtue of such laws."

It is not to be disguised, that if the fees above $1500 are to be viewed as *subjects of taxation, eo nomine,* within the mind of the legislature, anterior to the law of 1844, and at the passage thereof, that the pre-existing tax, if it can be so called, of fifty per cent., is fairly embraced by the words of the 34th section, and of course repealed. But I apprehend the law of 1810 cannot be considered as assessing or levying a tax properly so called. The law is entitled "An act taxing certain offices," but would much more appropriately have been called an act fixing the compensation of certain officers; for that it is, in effect and substance. "Whenever the amount of said accounts shall exceed fifteen hundred dollars, the auditor-general shall charge the said officers respectively fifty per cent. on the amount of such excess, which sum, so charged, shall be paid by them into the treasury." Fees are not necessarily the

property of the officer; they are so only when they are given to him as such, and for compensation. In several instances the fees are the property of the Commonwealth, whilst the salary of the officers is fixed by law. That is, in substance, the amount of the act of 1810. He (the officer) is to receive $1500, if the receipts of the office amount to that sum; and for all above he is to receive one-half, and the other half is to be the property of the Commonwealth, which he is bound to pay into the treasury, on pain of being guilty of a misdemeanor in office if he declines or refuses. This, then, has not the quality of a tax. It is neither assessed, levied, nor collected, in the usual acceptance of the term; and we cannot suppose that the legislature had this law in view, as a law imposing a state tax, but that it was viewed by them as a law fixing the amount of compensation of the officers, and requiring them to pay the excess beyond that compensation into the treasury, as money belonging to the Commonwealth.

It would be extremely difficult to imagine any tenable reason as existing in 1844, for repealing the law. At that time the object and clear design was to add to the resources and available means of the Commonwealth. This law afforded considerable revenue, and gave no trouble in the collection. It had not been complained of as oppressive, and gave to officers throughout the Commonwealth an adequate compensation; greater, in all probability, in very many of the counties, than that allowed to the auditor-general, or any other of the heads of departments. Why, then, could the legislature have intended to repeal it? We will not impute to them the inconsistency. I think they viewed the law in the same aspect in which I view it: that is, as a law fixing and defining the compensation of the officer, and not properly a law assessing or levying a tax. It is not, therefore, within the repealing clause. I can perceive distinctly enough that the legislature would violate no canon of established construction, in viewing the act of 1810 as a law fixing compensation. But I cannot impute to them an intent to repeal the act, without supposing them to have been guilty of carelessness or inadvertence; and I think the words used in the statute of 1844 leave the act of 1810 intact.

The third error assigned is disposed of by considering the two first, the last being compounded of the two former.

Judgment affirmed.